**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF VIRGINIA**
**ROANOKE DIVISION**

| | | |
|---|---|---|
| **JAMAR R. CEPHAS,** | ) | **CASE NO. 7:20CV00364** |
| | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | **MEMORANDUM OPINION** |
| | ) | |
| **BERNARD BOOKER, ET AL.,** | ) | **By: Michael F. Urbanski** |
| | ) | **Chief United States District Judge** |
| **Defendants.** | ) | |

Jamar R. Cephas, a Virginia inmate proceeding pro se, filed this civil rights action pursuant to 42 U.S.C. § 1983, alleging that prison officials failed to protect him from a physical attack by another inmate. After review of the record, the court concludes that the defendants are entitled to summary judgment on the ground of qualified immunity.

I.

On May 9, 2019, Cephas was assigned to A3 Pod at Buckingham Correctional Center ("BKCC"). At approximately 12:45 p.m. that day, Kevin Hunter, another inmate who was assigned to the same pod, followed Cephas into his cell and stabbed him multiple times with a four-inch, sharpened stainless steel object wound in rubber bands and latex gloves.[1] About a minute later, Hunter left the cell and went into the pod area on the top tier. Seconds after that, Cephas left his cell wearing a coat and started up the stairs. Hunter met Cephas at the top step and their altercation continued. At 12:48 p.m., Officer Turner in the control booth observed the fight and called for officers to respond. Within minutes, officers had separated the combatants.

[1] In support of the defendants' summary judgment motion, they submit the affidavits of S. Meinhard, BKCC Grievance Coordinator, and L. Holman, a BKCC lieutenant, both of whom have reviewed records maintained in the ordinary course of business concerning the May 9, 2019, incident and Cephas' grievance activity concerning that incident.

Immediately thereafter, Cephas opened his coat and told officers that he had been stabbed. They then escorted him to the BKCC medical unit, where medical staff assessed his injuries.

Medical personnel who examined Cephas noted five penetration wounds of various length, width, and depth—to his right upper forearm, left upper arm, right lateral torso below the ribs, left mid chest, and left upper chest under his arm. They noted no injuries to Cephas' hands. Officials arranged for Cephas to be transported to the local hospital emergency room. Later, he was flown to Virginia Commonwealth University Hospital ("VCU") for further treatment. Officers returned Cephas from VCU to BKCC on May 16, 2019, and he was released back into the general prison population on May 20, 2019. Cephas states that Hunter was transferred elsewhere after the attack.

In the § 1983 complaint, Cephas names as defendants the former BKCC warden, Bernard Booker; and building lieutenant Holman.[2] Cephas alleges that these administrators knew before the May 9, 2019, attack that Hunter was mentally ill and had been prescribed medications to treat his mental conditions. Cephas contends that under such circumstances, the defendants should have assigned Hunter to a "medical/mental pod/facility" and that they wrongly placed Cephas in danger by assigning Hunter to the general population unit where Cephas was injured. As relief, Cephas seeks monetary compensation.

The defendants have now moved for summary judgment on the ground that Cephas failed to exhaust administrative remedies as to his claims before filing his § 1983 complaint, in violation of 42 U.S.C. § 1997e(a). In the alternative, the defendants contend that they are entitled to qualified immunity. The court notified Cephas of his opportunity to submit additional evidence to counter the defendants' evidence. He responded by filing his own motion for summary judgment

---

[2] Cephas also sued Hunter, the assailant inmate, but the court dismissed all claims against that defendant by prior order.

on the merits of his claims, to which the defendants have responded. Thus, the court concludes that the parties' motions are ripe for consideration.

II.

The defendants contend that Cephas simply has not stated facts showing that the defendants violated his constitutional rights by failing to prevent him from being harmed by inmate Hunter as he was. Because Cephas has not stated any constitutional claim against them, they assert that they are entitled to qualified immunity against his claims for monetary damages for that harm. See Saucier v. Katz, 533 U.S. 194 (2001), receded from by Pearson v. Callahan, 555 U.S. 223, 227 (2009). The court agrees.

Law enforcement officers performing discretionary functions "are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). An officer is entitled to qualified immunity if the court finds that either: (1) the facts, taken in the light most favorable to the plaintiff, do not present the elements necessary to state a violation of a constitutional right; or (2) the right was not clearly established such that it would not have been "clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Henry v. Purnell, 501 F.3d 374, 377 (4th Cir. 2007) (citing Saucier, 533 U.S. at 205). If the court finds that the factual allegations do not support the elements of a constitutional violation, qualified immunity applies under the first prong of the Saucier standard, and the court must grant the defendants' motion. If the court concludes that Cephas has stated facts presenting all elements of a constitutional claim, then the court must also decide whether the contours of the right were clearly established. Saucier, 533 U.S. at 201-202; see also Pearson, 555 U.S. at 236

(noting that judge may decide, case by case, which facet of the qualified immunity analysis should first be considered).

The right at stake in this case arises under the Eighth Amendment and its protections against cruel and unusual punishment. "Because being assaulted in prison is not part of the penalty that criminal offenders pay for their offenses against society, prison officials are responsible for protecting prisoners from violence at the hands of other prisoners." Danser v. Stansberry, 772 F.3d 340, 346 (4th Cir. 2014). On the other hand, not "every injury suffered by one prisoner at the hands of another . . . translates into constitutional liability for prison officials responsible for the victim's safety." Farmer v. Brennan, 511 U.S. 825, 834 (1994). To state a constitutionally significant claim that an official failed to protect him, the inmate must present evidence to "establish a serious deprivation of his rights in the form of a serious or significant physical or emotional injury." Danser, 772 F.3d at 346.[3] Also, he must show "deliberate indifference to inmate health or safety"—by "introduc[ing] evidence suggesting that the prison official [subjectively] had actual knowledge of an excessive risk to the plaintiff's safety." Id. at 347.

Cephas has met the first aspect of the constitutional standard by showing that he suffered significant harm from Hunter's attack. His claim fails on the second, deliberate indifference part of the standard, however. He suggests that Hunter, as a mentally ill inmate taking medications, posed a general risk of harm to other inmates, like Cephas, in the general population. "[D]eliberate indifference entails more than ordinary lack of due care for the prisoner's interests or safety, and more than mere negligence, but less than acts or omissions [done] for the very purpose of causing harm or with knowledge that harm will result." Makdessi v. Fields, 789 F.3d 126, 133 (4th Cir.

---

[3] The court has omitted internal quotation marks, alterations, and citations here and throughout this memorandum opinion, unless otherwise noted.

2015). The "official's subjective actual knowledge can be proven through circumstantial evidence . . . that the substantial risk of inmate attacks was longstanding, pervasive, well-documented, or expressly noted by prison officials in the past, and the circumstances suggest that the defendant . . . had been exposed to information concerning the risk and thus must have known about it." Id. at 133 (emphasis added). A general risk could "come[ ] from a single source or multiple sources," and the plaintiff's failure to warn officials of the risk is not dispositive. Id. at 134.

Under Cephas' theory in this case, he must state facts showing that, subjectively, each defendant official knew (or must have known) facts indicating that Hunter as a mentally ill inmate posed a substantial risk of serious harm to Cephas or to inmates in general; recognized the existence and seriousness of that risk; and failed to respond reasonably to alleviate it. Id. at 133-34. Officials cannot be liable under § 1983 when their mere alleged inadvertence or negligence results in an incident where one inmate harms another inmate. Id. at 132. A showing of negligence does not rise to the level of deliberate indifference. Davidson v. Cannon, 474 U.S. 344, 347-48 (1986); see also Cty of Sacramento v. Lewis, 523 U.S. 833, 849 (1998) (noting that "liability for negligently inflicted harm is categorically beneath the threshold of constitutional due process").

Cephas' complaint identifies only two defendants: Holman, a building lieutenant; and Booker, the former warden. Careful parsing of his submissions as a whole reflects the following factual allegations against these defendants. Cephas states that when he arrived at BKCC on February 12, 2019, Hunter had already been housed there "for some years, the institutional medical records can show." Compl. Ex. 7, ECF No. 1. Cephas alleges that Holman "already had knowledge of [Hunter] who had medical mental illness matters," and that Booker

> had knowledge [Hunter] was taking medicine for these mental illness matters. So [Hunter] should have been in a medical/mental/pod/facility, but by him not, (they) [Booker and Holman] were wrong, because [Cephas was] put in danger, and

> harmed by the mentally ill offender [Hunter], because he was housed in general population.

Id. at 4. Cephas also states that BKCC officials

> did not follow the correct protocol and procedures as far as housing inmates with illnesses [and] fail[ed] to follow the guidelines and walk the necessary steps, which caused [Cephas] to . . . be harmed/stabbed by [Hunter].
>
> Records reflect that [Hunter] was not properly housed in the settings that reflect his mental conditions and circumstances.[4]

Mot. Summ. J. 2, ECF No. 26.[5] Cephas complains that

> institutional operation procedures designate and assign correctional officers as security personal who[se] duties are to properly observe, oversee[,] intervene and implement all rules, officers that should've been watching and in the designated areas in which they are placed in. A3 pod was not properly watched and security failed to secure A3 pod fully and professionally during their work hours, by failing to make sure that no inmate enters a cell that they are not housed in.

Id. at 3. He asserts that his rights were violated because "these institutional rules/oaths that employees sworn to, were not adequately and professionally met." Id. Cephas states, "I was not protected nor watched by the booth officer in the correct way that I should have been." Mot. Summ. J., Cephas Aff. ¶ 1, ECF No. 26-1.

In essence, Cephas alleges that, from unidentified sources, Holman and Booker, as administrative officials, knew that Hunter had mental health issues for which he took medications; that they failed to follow (or to supervise others to follow) unspecified prison regulations concerning conditions under which such inmates should, or should not, be housed in a general population setting; and that these defendants' subordinates who were assigned to provide security

[4] Cephas' submissions do not include copies of the procedures, protocols, or other records to which he vaguely refers, nor does Cephas cite the names of these provisions or records or quote any particular provision from them in support of his assertions about inmate housing.

[5] Cephas also mentions several nondefendant officials whom he believes should be held accountable "for not having this mentally ill and sick individual Mr. Hunter, housed in a mental facility/pod/detention center or institution," thereby "neglecting [their] duties." Mot. Summ. J. 2, ECF No. 26.

in A3 pod failed to do so on May 9, 2019. None of these types of alleged wrongdoings constitutes deliberate indifference.

First, Holman and Booker as supervisors cannot be held automatically liable for the omissions of their subordinate officials assigned to maintain security in the prison area where Hunter attacked Cephas. Ashcroft v. Iqbal, 556 U.S. 662, 676 (2009) ("Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."). Moreover, Cephas fails to identify any individual official who was present during the attack on May 9, 2019, who failed to respond reasonably to the risks of harm it presented.[6]

Second, the defendants' alleged failure to follow prison or state regulations about where to house mentally ill inmates or otherwise supervise their movements does not give rise to a claim that they violated Cephas' constitutional rights. "[T]he Constitution creates no entitlement to . . . any such procedure voluntarily established by the state." Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1994). Thus, allegations that state officials failed to follow state regulations or procedures do not amount to a constitutional violation actionable under § 1983. See Riccio v. County of Fairfax, Virginia, 907 F.2d 1459, 1469 (4th Cir. 1990); Robinson v. Clark, No. 5:12-CV-00502-JMC, 2013 WL 3110003, at *4 (D.S.C. June 18, 2013), aff'd, 543 F. App'x 339 (4th Cir. 2013) (finding no actionable § 1983 claim based on official's alleged violation of state procedures in failing to provide mental health treatment to plaintiff's cell mate).

[6] Even if Cephas could identify officers who could have intervened in, or prevented, the attack, he fails to state facts showing any supervisory shortcomings by the defendants. Such a claim requires facts showing: (1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show "deliberate indifference to or tacit authorization of the alleged offensive practices,"; and (3) that there was an "affirmative causal link" between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff. Shaw v. Stroud, 13 F.3d 791, 799 (4th Cir. 1994). Cephas has failed to allege facts that would establish the Shaw elements against either Holman or Booker.

Third, Cephas fails to state any facts to support his bald contentions that the defendants knew Hunter posed a serious risk of harm toward Cephas or any other inmate in the general population unit where he was housed. Initially, Cephas fails to show how the defendants knew any details about Hunter's mental condition or medications. It is well established that under federal law, medical records normally remain confidential except in discussions with medical professionals. See, e.g., Hembree v. Branch, No. 3:17-CV-485-FDW, 2020 WL 1042247, at *5 (W.D.N.C. Mar. 3, 2020) (noting sheriff and employees rely on medical staff and do not "have access to inmate medical records and only have limited information regarding a patient's health pursuant to [the Health Insurance Portability and Accountability Act of 1996, known as] HIPAA").

Similarly, Cephas makes no allegation that Hunter or any other inmate with similar mental health issues had ever previously injured another inmate or staff member, or had threatened to do so. Thus, Cephas fails to present any evidence of previous actions by Hunter or other mentally ill inmates that, arguably, put the defendants on notice that such inmates posed a pervasive and serious risk of harm to their fellow inmates in a general population unit. At the most, the events Cephas describes suggest that officials assigned Hunter to a general population housing unit where he could interact with other inmates, without verifying that Hunter's mental status might cause him to assault others. Risks of harm created through such inadvertent or negligent actions do not give rise to constitutional claims. See Grayson v. Peed, 195 F.3d 692, 695 (4th Cir. 1999) (holding negligent failure to protect is not sufficient to establish constitutional violation). Because Cephas fails to allege facts stating a prima facie case of deliberate indifference by the defendants, he has not presented the elements necessary to state a violation of a constitutional right against them; therefore, they are entitled to qualified immunity against his § 1983 claims. Saucier, 533 U.S. at

205. Accordingly, the court will grant the defendants' motion for summary judgment on the ground of qualified immunity.[7]

For the same reasons, the court must deny the motion for summary judgment that Cephas has filed. With his motion, he fails to submit any evidence showing how the defendants knew of Hunter's mental illness or medication, or that they knew Hunter presented a serious risk of harm to Cephas or anyone else. As such, Cephas fails to present any genuine issue of material fact on which he could persuade a fact finder that the defendants' actions or omissions on May 9, 2019, constituted deliberate indifference or otherwise violated his constitutional rights under the Eighth Amendment. An appropriate order granting the defendants' motion, and denying Cephas' motion, will enter herewith.

---

[7] Cephas also failed to properly exhaust available administrative remedies as required under 42 U.S.C. § 1997e(a). This section mandates that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). It is undisputed that Cephas failed to file a Regular Grievance about Hunter's attack within the thirty-day time limit thereafter, as established by the applicable prison procedure. See Jones v. Bock, 549 U.S. 199, 211 (2007) (holding exhaustion is affirmative defense); Woodford v. Ngo, 548 U.S. 81, 90-94 (2006) (finding inmate's untimely grievance was not "proper exhaustion" of available administrative remedies under § 1997e(a)).

Cephas' failure to exhaust properly can be excused if he shows that the remedies under the established grievance procedures were not "available" to him. Ross v. Blake, 136 S. Ct. 1850, 1858-60 (2016). An administrative remedy is not available "if a prisoner, through no fault of his own, was prevented from availing himself of it." Moore v. Bennette, 517 F.3d 717, 725 (4th Cir. 2008).

Cephas loosely blames his physical injuries for his failure to file a timely Regular Grievance. He states that his submissions were rejected because the "filing time had expired, by me being in pain and not able to file on time with my wounds/stitches." Compl. 3, ECF No. 1. Cephas alleges, however, that he was at VCU or in the prison infirmary, receiving treatment, for only a week and a half after the assault and does not explain how his injuries prevented him from preparing a timely Regular Grievance during that time. Moreover, the defendants' undisputed records do not indicate that Cephas sought help to prepare and file a Regular Grievance within the appropriate filing time. Finally, when officials rejected his first two regular grievances as untimely, Cephas did not appeal those rulings to explain why he had not timely filed. When the grievance office rejected as untimely his third Regular Grievance (dated January 13, 2020), and Cephas appealed that intake decision, the ombudsman upheld the finding that Cephas had waited too long to pursue his Regular Grievance.

The defendants have moved for summary judgment based on Cephas' failure to exhaust administrative remedies. Because the court herein determines that they are entitled to summary judgment on the ground of qualified immunity, however, the court declines to make a summary judgment finding on their alternative exhaustion defense.

The Clerk is directed to send copies of this memorandum opinion and accompanying order to the plaintiff and to counsel of record for the defendants.

**ENTER**: This 20th day of July, 2021.

Michael F. Urbanski
Chief U.S. District Judge
2021.07.20 23:06:11
-04'00'

Chief United States District Judge